### JOHN B. PICKETT *v.* JOHN PEARSONS.

In the action of account the proof under the plea of *plene computavit* is somewhat different from what it is before the auditor, on the issue of *nothing in arrear.* The former defence seems to rest upon the ground of an express settlement of the dispute, and a surrender of all the property pertaining to the trust, while the latter issue is sustained by merely showing that there is nothing *now* in the defendant's hands, for which he is liable to account; which may be shown, either by proving that the property has been surrendered to the plaintiff, or to a third person, by the plaintiff's direction, or that it has been destroyed, or has perished, without the fault of the defendant.

The rules of pleading, in the action of account, laid down in *Bishop* v. *Baldwin,* 14 Vt. 145, recognized and affirmed.

An agent can only be held liable for neglect, in an action of account, in a case where the negligence has been gross and palpable.

An agent is only bound by the instructions of his principal as he understood them, unless there was fraud, or some fault on his part, in not comprehending them; and he will not, in the absence of all proof, be presumed to be in fault in not comprehending oral instructions to the full extent.

If an agent take a demand for collection, and receive, in payment, bills of a bank, the solvency of which he does not know, and take the guaranty of

Pickett *v.* Pearsons.

the debtor, with surety, that the bills are good, and, upon making his conduct known to his principal, the principal receive the money and guaranty, saying he will see what can be done with the money, and he then keep it two or three months to ascertain its value, and the bills prove to have been worth but twenty cents on the dollar at the time they were received by the agent, the agent is not liable, in an action of account, for the deficiency in the value of the bills, but the principal will be considered as having acquiesced, by his conduct, in the doings of the agent.

So where the agent, in such case, took from the debtor a note for part of the demand, instead of requiring money, as directed, and the principal received the note, and controlled it, and retained possession of it until the hearing before the auditor in an action of account against the agent, it was held that the agent could not be charged with the note in such action, as for so much money received.

ACCOUNT,—the plaintiff declaring against the defendant as bailiff and receiver. Judgment to account was rendered, and the case was sent out to an auditor, who reported as follows.

In the fall of 1841 the plaintiff agreed with the defendant, who was going to Wisconsin, that he would pay one half of his expenses, if he would transact certain business there for him,—which the defendant agreed to do; that the plaintiff thereupon delivered to the defendant certain demands for collection, and, among them, a demand against one Chickering, who resided in Wisconsin Territory, for about eight hundred dollars; that, in giving instructions to the defendant respecting the demands, the plaintiff authorized him to receive money upon them as good, or not poorer, than the bills of New York country banks, except upon the Chickering demand, and that upon that demand he must get money as good as gold and silver,—by which the plaintiff intended such current bank bills as were at par here; that the plaintiff farther authorized the defendant to discount to Chickering thirty three and one third *per cent.* on $400 of that demand for two months; that the defendant proceeded to Wisconsin, and collected the Chickering demand, as well as a considerable amount upon the other demands; that, in settling the Chickering demand, he discounted to Chickering thirty three and one third *per cent.* upon the *whole amount* for two months, making the whole discount $44,40, instead of $22,20 as instructed by the plaintiff; that the defendant also received upon the Chickering de-

Pickett *v.* Pearsons.

mand $535,00 in bills of the Towanda bank, and a note signed by Chickering for $56,00, and the balance in funds about which there was no dispute, and delivered to Chickering a deed of land, which had been prepared and forwarded by him by the plaintiff, and took up a bond which the plaintiff had previously given to Chickering, conditioned for the conveyance of the same land; that, when the defendant received the Towanda bills, he did not know whether they were good, or not, he having no acquaintance with the bank, and he took a guaranty, signed by Chickering, and by one Newell as surety, by which they agreed to make up those bills as good as bills of the New York country banks; and that it was conceded that the said Chickering and Newell then were, and still continue to be, responsible for the amount specified in said guaranty.

The auditor farther reported that he found that the defendant misunderstood the plaintiff's instructions relative to the discount, and the quality of the money he was to receive on the Chickering demand, and that he understood that he was at liberty to make the specified discount upon the *whole* demand and receive money upon it, not less, in value, than the bills of New York country banks, the same as upon the other demands which he took for collection; that, at the time the defendant settled with Chickering, New York country bank bills were at a discount of five *per cent.* here; and that the Towanda bills were not then worth, at any place, more than twenty cents on the dollar, the bank having previously failed.

The auditor farther reported that the defendant returned, and called upon the plaintiff, on the fourteenth day of November, 1841, to render an account of his business; that the plaintiff then received of the defendant, and accepted, all the papers and money, except those connected with the Chickering business; that, when the defendant produced the Towanda bills, and the guaranty which he had taken, the plaintiff informed the defendant that he did not know any thing about the bills, or the bank, but that he would take them and see what he could do with the money; that the plaintiff did then take the bills and guaranty, and also the $56 note, and set about inquiring respecting the money, inquiring at the Haverhill Bank, N. H., at Boston, and at the City of New York, and that, in the course of the then next winter, he ascertained that the said bills were not worth more than twenty cents on the dollar; that the

Pickett *v.* Pearsons.

plaintiff did not speak to the defendant upon the subject until about a month after he received the bills and guaranty, and that, after that, he occasionally advised the defendant of his progress in ascertaining the facts relative to the bills; that as soon as the plaintiff had ascertained that the Towanda Bank had failed before the defendant received the bills, and had learned the value of the bills, he notified the defendant of these facts, and requested him to settle the matter with him and make up the money as good as that the plaintiff had instructed him to receive,—which the defendant declined doing; that the plaintiff had kept the bills and guaranty, and never offered to return them to the defendant, until the time of the audit, at which time the defendant declined receiving them; that the plaintiff had also retained in his possession the $56 note, excepting that, in the summer of 1843, he went to Wisconsin, and called upon Chickering for payment of the amount due upon it, and, upon Chickering's declining to make payment, left the note with one Stearns for collection, taking Stearns' receipt therefor; that the defendant never called upon the plaintiff for the bills or guaranty; and that the plaintiff, when he was in Wisconsin, in 1843, did not call upon either Chickering, or Newell, upon the guaranty.

The plaintiff claimed to recover,—1, For the amount received by the defendant of Chickering in bills of the Towanda Bank,—being $535,00,—2; Interest on the same to the time of the audit, which was June 20, 1844, being $85,46,—3, One half of the discount made by the defendant to Chickering, being $22,20,—4, The amount of the note taken by the defendant from Chickering, being $56,00. The county court rendered judgment, upon the report, for the plaintiff for the amount of the three first items and disallowed the claim for the $56,00 note; to which decision the defendant excepted.

*S. Austin* and *Tracy & Converse* for defendant.

To the allowance of the three items, for which the county court rendered judgment in favor of the plaintiff, the defendant objects.

1. Because from the auditor's report, as the facts are found by him, it appears that the defendant was the agent of the plaintiff, in receiving this money of Chickering.

2. As it regards the item of $535.00, the defendant received

the bills in good faith, supposing the quality of the money to be as required by his instructions, that is, equal to the bills of the New York Country banks. The plaintiff, then, was bound to receive the same of the defendant, in discharge of and in acceptance of his agency.

3. We contend that the acts of the plaintiff on the 14th of November, 1841, and subsequent thereto, amounted to a ratification of the defendant's agency. The taking and using the note, which is the item disallowed in the plaintiff's specification, was, as the auditor has found, an acceptance in part, as it regards the Chickering demand. And an acceptance in part, or a ratification in part, is a ratification of the whole, as between principal and agent. N. Y. Dig. 766–70. 1 Petersd. 104.

4. The receiving the guaranty of Chickering by the plaintiff was a ratification of the agency of the defendant, as it regards Chickering. If the plaintiff did not design to make the act of the defendant his own, he should have shown his dissent at the time he first had knowledge of the doings of the defendant, and have repudiated them.

There is nothing in the case showing that the plaintiff did not intend to rely upon the guaranty, until the summer of 1843.

5. The plaintiff has never called upon Chickering upon his guaranty, nor given him any notice of the failure of the money received by the defendant. The plaintiff should either have shown his dissent, and returned the guaranty to the defendant forthwith, together with the money, so that the defendant might seek his remedy, if liable at all, against Chickering, the guarantor, or he should have given Chickering notice that he repudiated the act of the defendant, as agent, and that he still held him responsible upon the original contract, as his agent had exceeded his authority.

6. If the defendant is liable at all, he is not liable in this form of action. The plaintiff has alleged that the defendant was the receiver of his moneys, and that he refuses to account, while he attempts to charge him with having exceeded his instructions, and thereby to make him liable for the money, upon the ground that it was such as the plaintiff ordered him not to receive. Were it even so, we think the plaintiff has entirely mistaken his remedy. And the objection to the form of action is well taken upon the report of the auditor.

Pickett *v.* Pearsons.

7. As it regards the item of discount, the defendant followed his instructions, as he understood them, which, we think, is a sufficient excuse for him.

*Parker* and *Peck* for plaintiff.

1. The defendant was a special, paid agent, so constituted by the plaintiff, for a particular purpose, and with a specific and limited authority,—to deliver a deed, take up a bond, to make a certain discount on one half of the debt, for two months, and to receive the balance of the claim in funds as good as gold and silver, or, at worst, in such current bills as were at par here. This was the whole extent of his power. His receiving money, therefore, of less than par value, discounting on the whole debt, instead of half, taking an unauthorized guaranty, and giving up an ample lien on realty, and taking a note, without any security, for a part of the debt were acts clearly beyond his authority and utterly void, and, being so, render the defendant liable to the plaintiff and personally chargeable for all loss, either immediate or consequential. *Dellafield* v. *State of Illinois*, 2 Hill 159. *Andrews* v. *Kneeland*, 6 Cow. 354. *Munn* v. *Commission Co.*, 15 Johns. 44. *Beals* v. *Allen*, 18 Johns. 363. *Rossiter* v. *Rossiter*, 8 Wend. 494. *Armstrong* v. *Gilchrist*, 2 Johns. Cas. 424. Story on Agency, 18, § 17; 19, § 18; 140, § 126; 199, § 165; 214, § 181; 216, § 183; 225, § 192. Paley on Agency 4, 150. 2 Kent's Com. 617–621, (3d edit.) *Fenn* v. *Harrison*, 3 T. R. 757. *Huntington* v. *Wilder*, 6 Vt. 334. *Clark* v. *Foster*, 8 Vt. 98. *Roberts* v. *Button*, 14 Vt. 195.

2. The acts of the plaintiff, in receiving a part of the money and taking into his custody the Towanda bills, guaranty and other papers, as found by the auditor, cannot we contend, be legitimately construed into the ratification of the acts of the defendant. Even if the plaintiff had unconditionally accepted the money, he would not have been bound, under the circumstances, by such accounting. It would have been no payment in law; and the plaintiff might, at any time, have returned the papers, or tendered them to the defendant, and demanded other and current funds, or held the defendant responsible in an action. But, by the finding of the auditor, the bills and other papers were taken by the plaintiff only on the condition, that they should prove to be good and available, on inquiry; and

the auditor farther finds that they were not good, but were almost wholly worthless, and, indeed, in no respect available for any purpose. 'This, at most, was but a qualified acceptance, by no means a ratification; when the plaintiff ascertained the fact of their worthlessness, he immediately notified the defendant, and called on him for a settlement. "When an agent does an act unauthorized by "his orders, the principal is not bound to ratify, or disavow it, as "soon as he is apprised of the circumstance; he has a right to de- "liberate." *Kingston* v. *Kincoid*, 1 Wash. C. C. Rep. 455. Story on Agency, 288, § 243. 2 Kent 616. *Russell* v. *Green*, 5 Conn. 269, (2d series.) *Owings* v. *Williams*, U. S. Cond. R. 527. Story on Agency 514, § 413; 112, § 99. Paley on Agency 220. *Wainwright* v. *Webster*, 11 Vt. 576. *Gilman* v. *Peck*, 11 Vt. 516. *Bishop* v. *Baldwin*, 14 Vt. 145.

The opinion of the court was delivered by

REDFIELD, J. The rules of pleading, in the action of account, were correctly laid down, we think, in the case of *Bishop* v. *Baldwin*, 14 Vt. 145. If the rule there laid down admits of any farther qualification, than the exception there named, it does not now occur to us. It is there said, that "what may be pleaded in bar must be so pleaded," and that "all defences, which might be pleaded in bar, if not pleaded are considered as waived,"—which are only identical propositions in different terms. It is there determined that the judgment to acccount establishes all the facts in the declaration, except the defendant's being in arrear. See *Taylor* v. *Page*, Cro. Car. 116, as fully confirming the rule laid down in *Bishop* v. *Baldwin*.

This, then, would seem to be the only inquiry in the 'present case,—Was the defendant in arrear to the plaintiff at the time of the accounting before the auditor? This is, I am aware, almost precisely the same inquiry, which might have been raised, before the court and jury, upon a plea of *plene computavit*, but not precisely the same, perhaps. The defence of *plene computavit* seems to rest upon the ground of an express settlement of the dispute and the surrendering of all the property pertaining to the trust, while that of *nothing in arrear* goes upon the ground that there is nothing *now* in the defendant's hands, which he is liable *to account* for. This

may be shown in various modes,—as, for example, that it has been handed over to the plaintiff, or to a third person by his direction, or that it has been destroyed, or has perished without the fault of the defendant, B. N. P. 128. Thomas' Co. Lit. 166, note 19. Co. Lit. 89 *a.* 2 Ch. Cas. 2. Hargrave's notes to Co. Lit., n. 5, 89 *a,* (75.)

There seems to be no question in the case, except as to the Towanda money received of Chickering. There is no pretence for charging the defendant with the note of Chickering, taken for the balance of the former note ;—for it is as good as the former note, to that amount, and it was accepted by the plaintiff, and was treated as his own up to the time of the trial before the auditor. In regard to the Towanda money, we think the defendant is not in arrear. The obligation of the defendant, in regard to the matter, must be according to the contract, *as he understood it.* He was only bound by the contract according to his own understanding, unless there was fraud, or some fault on his part, in not comprehending the plaintiff's instructions,—which is not shown, and will not be presumed. Perhaps it ought, rather, to be supposed that the plaintiff was deficient, in not fully expressing his meaning. Taking the defendant's obligation in this sense, it seems to us, that he cannot be made liable in this action.

1. If it be conceded that the defendant was guilty of negligence, in taking this money without farther inquiry into its character, it could hardly be considered a case of gross negligence, whereby he would make the money his own, and render himself liable to account for it, as for current bills. For he took the precaution to have Chickering's guaranty, with surety; and when all the facts were made known to the plaintiff, *he* took the money and the guaranty, saying he would see what he could do with it,—which he would not have done, had it been a case of palpable neglect. His conduct satisfies us, that, at the time, he considered that the defendant had done well, and that he had done as the plaintiff would have done himself, or as any prudent man would have done. It was not an easy matter to ascertain the character of Towanda money, perhaps, in Wisconsin. If it were good, he would wish to have it; if not, the guaranty made the claim no worse, at all events, than the note, and probably better. The most that could be claimed in

the case is, that there was *some* neglect, *some* want of *ordinary care*, which could only subject the defendant, I apprehend, to a special action upon the contract, and not make him liable to account for the money as good money. But there seems to us to be no satisfactory evidence in the case of *any neglect*. If there was neglect, and that is important, it should have been found by the auditor as matter of fact; but we think the auditor reports such facts, as virtually shows that there was *no neglect*.

2. It seems very plain to us, that the plaintiff's taking the money and guaranty, and keeping them for months, fully exonerated the defendant. The plaintiff received of the defendant all that the defendant received of Chickering, and all that belonged to him, under protest, to be sure, that he would see what could be done with the money. How long a time is to be allowed him, to ascertain that fact? It could hardly be pretended that two or three months were necessary to ascertain that fact. It could just as well be done in as many weeks, and very likely in as many days. The credit of a bank can be more easily ascertained in Vermont, and especially in Boston, or New York, than in the wilderness, or the prairies of Wisconsin, where one might almost as well inquire, for such a fact, of an Indian hunter, as of the American land jobber.

3. Suppose the plaintiff's delay to ascertain the character of this money and to notify Chickering has released his guaranty,—could the loss be made to fall upon the defendant? This no one will pretend; which shows that the plaintiff had made the money his own. I do not pretend to say that the delay here will exonerate Chickering, but I put the case to illustrate the effect of the delay. We think it clear that the delay was such as to exonerate the defendant. By a reference to Hill's New York reports, I find that this subject has, to some extent, been under discussion there. (*Thomas* v. *Todd*, 6 Hill 340.) It is there held that payment in counterfeit bills, or in the bills of a bank which has failed, although this fact is not known to either party, is a nullity, and will not discharge the debt. The same had been decided in this state. *Gilman* v. *Peck*, 11 Vt. 516. The case of *Thomas* v. *Todd*, decides, too, as did also that of *Gilman* v. *Peck* impliedly, that, if the party receiving the bills is guilty of negligence, in not returning them within a reasonable time after he discovered, or might have discovered, their worthlessness, he will

be obliged to sustain the loss. But the consideration of this point is not important, except as it shows how manifestly the defendant is exonerated from all responsibility. Very likely the obligation of Chickering, upon his guaranty, may be different from the implied obligation resulting from merely giving the bills in payment, without fault.

Judgment reversed, and judgment for defendant, upon the report.