### TRIGG & CO. *v.* SECOND NATIONAL BANK.

**Principal and Agent—Ratification by Principal.**

> Where the cashier of a bank is directed by another bank to buy for it a note if he thinks the collateral offered is good, and he does think so and makes such purchase, and the note is not paid at maturity or at all, and the collaterals prove of no value, and the makers of the note become insolvent, where such note became due on November 1st, being in the hands of such cashier, who delivered it with the collaterals to the purchasing bank in December following, who received it, knowing all the facts and that the makers were insolvent and the collateral valueless, and did not at any time thereafter offer to return it or make any effort to collect it, such bank thereby ratified the action of its agent, the cashier, who bought the note for it, and cannot recover from such cashier or his bank on the theory that it had been misled by the purchasing cashier as to the sufficiency of the security, and thereby wrongfully induced to purchase said note.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

April 2, 1877.

OPINION BY JUDGE COFER:

The appellants are private bankers doing business in Glasgow, Kentucky, and the appellee is a banking association organized under the act of congress of June 3, 1864, entitled "An act to establish a national currency by pledge of United States bonds, and to provide for the circulation and redemption thereof."

July 8, 1874, W. E. Snoddy wrote from Louisville to the appellants, informing them that he had a note on R. E. Cross for over four thousand dollars, which would fall due November 1, 1874, then ensuing, which he offered to discount to them and to secure by undoubted collaterals. To that letter the appellants replied July 9, saying that they would discount the note at 10 per cent. with un-

doubted collaterals placed in the hands of Geo. S. Allison, who was appellee's cashier.

In answer to that letter Snoddy, on the 11th day of July, wrote to the appellants, enclosing the note proposed to be discounted and describing the collaterals offered. Appended to that letter was a statement signed by "Geo. S. Allison, Cashier," that the collaterals described had been deposited with him.

July 13, appellants wrote to Allison, enclosing Snoddy's letter of the 11th, and the note, and said, "If you think the collaterals undoubtedly good we will discount the bill." On the 15th Allison telegraphed to them "The collaterals undoubtedly good. Shall I discount for your account?" and on the same day they replied by letter, "Telegram received. Discount the Snoddy paper at 10 per cent. Send us statement of same, date of note, etc., so we can make the entry. Hold the note and collaterals for collection." At that time the appellants had a considerable sum on deposit with the appellee, and on the 17th of July the Snoddy note was discounted and the proceeds charged to appellants' account.

The note was not paid at maturity; the parties bound on it became insolvent and the collaterals proving to be of little or no value, the appellants brought this action against the appellee, alleging in substance that they constituted the appellee their agent and instructed it to invest for them the sum of $4,326.95 only on collateral security that was undoubtedly good; that the appellee for a valuable consideration agreed to do so, and in the capacity of agent loaned the money, taking no other security than that we have before referred to; that at the time the loan was made Cross, the maker of the note, was in failing circumstances and has since failed; that A. J. McDowell & Co., the endorsers, were insolvent at the time and the collaterals were worthless, all of which facts were well known to the appellee when the loan was made.

The appellee answered, among other things, that after the note fell due, the appellants, with full knowledge of all the facts, accepted the note and the collaterals pledged to secure it, and held the same without repudiating the transaction and without offering to return them, and still had them in their possession, and claimed that if it had ever been liable its acts had been ratified and it was thereby discharged from liability. The evidence showed that the note was delivered to the appellants in December, and that they then knew the facts in regard to the financial condition of the parties to the note, and the value of the collaterals; and it does not appear that they at any

time offered to return them, or made any effort to collect them, and it is almost certain that such an effort would have been unavailing.

It may well be doubted on the facts disclosed by the correspondence between the appellants and Allison, whether the loan can be said to have been made by either Allison or the appellee. The note to be discounted was sent to the appellants in one of Snoddy's letters, and the collaterals were described to them, and they then wrote "If you think the collaterals undoubtedly good we will discount the bill," and upon being informed by Allison that they were undoubtedly good, the appellants directed him to make the discount for them. The act of discounting the note was done by the express direction of the appellants. Their final order left him no discretion. If the appellee is liable it cannot be for making the loan upon insufficient security. It was made upon the identical security upon which the appellants directed it to be made.

If a liability was incurred it was because the appellee, or its cashier, had mislead the appellants as to the sufficiency of the security and thereby induced them to direct the loan to be made. The direction was not a general one to loan on undoubted collaterals, but the message was, "If you think the collaterals good we will discount the bill." That gave no authority to either Allison or the appellee to make the loan, and so Allison seems to have understood it, for he telegraphed "The collateral undoubtedly good. Shall I discount for your account?" to which appellants replied, directing the discount to be made; and on this state of fact the appellee stands upon precisely the same ground as if the appellants had directed the note and collaterals to be sent to them at Glasgow, and they had forwarded to Snoddy their check on the appellee for the proceeds of the note. No effort was made, and the pleadings are not sufficient to charge the appellee in this aspect of the case, and the appellee having denied that it was the agent of appellants or made the loan for them as such, the uncontradicted evidence shows the denial to be true.

But if it were assumed that the appellee was appellants' agent and made the loan as such, and that such business was not ultra vires a national bank, a question upon which we find it unnecessary to intimate an opinion, the uncontradicted evidence that they received the note and collaterals, and held them for several months with a full knowledge of all the facts without disaffirming the transaction, established a ratification which precludes a recovery. Story on Agency, Sec. 255a; *Pickett v. Pearsons,* 17 Vt. 470; *Towle v. Steven-*

*son,* 1 Johnson Cases 110; *Cairnes v. Bleecker,* 12 Johnson 300; *Courcier v. Ritter,* 4 Wash. C. C. R. 549.

The judgment must therefore be *affirmed.*

*T. T. Alexander, D. W. Sanders,* for appellants.

*D. M. Rodman, John Roberts,* for appellee.