CHARLES H. FALSKEN v. FALLS CITY STATE BANK.

FILED FEBRUARY 4, 1904.   No. 13,307.

Principal and Agent: INSTRUCTIONS. An agent who, in good faith and without negligence, acts upon his own understanding of faulty or ambiguous instructions, is not liable in damages to his principal, although his interpretation of them may be erroneous.

ERROR to the district court for Richardson county: CHARLES B. LETTON, JUDGE. *Affirmed.*

*Francis Martin, Edward Falloon* and *C. Gillespie,* for plaintiff in error.

*Reavis & Reavis, contra.*

AMES, C.

Farrington and Towle were loan brokers doing business at Falls City in this state. The plaintiff Falsken obtained through them a loan of $3,500 upon his note and mortgage upon a tract of land lying in that vicinity. Afterwards he loaned to Farrington $2,500 upon the note of the latter secured by collaterals. Falsken lived at Kansas City. On the 29th day of July, 1899, he transmitted through the mails to the defendant, the Falls City State Bank, the Farrington note and collaterals accompanied by the follow-

ing letter, as a copy of it appears incorporated into the bill of exceptions:

"KANSAS CITY, Mo., July 29, 1899. 914 E. 17 St.

"*Falls City State Bank.*—DEAR SIRS: Inclosed please find note for $2,540 against F. E. Farrington for collection and collateral bonds; Note of $2,500 in favor of F. E. Farrington and two Int. notes or coupons of $15 each attached to bond. You will give to F. E. Farrington as soon as my note is settled $2,000, Two thousand, to be paid Aug. 1-99 on my $3,500 loan and $75 to be paid on same Int. note also due Aug. 1-99, dated 2-7-95 due in five years. Send me receipt for $2,000 and Int. note from the said $3,500 note and mortgage holder against me. Said loan was made through Farrington & Towle and the balance $465 less your collection fee send me check.

"Yours truly, C. H. FALSKEN."

On August 1, 1899, Farrington satisfied his obligation with the bank and obtained a surrender of it and of his collaterals. On the same day, and as a part of the same transaction, the bank gave him two drafts on a New York bank for $2,000 and $105 respectively, and remitted to Falsken at Kansas City by draft $462.60, the aggregate of the three sums being the amount of the Farrington note. At or about the same time Farrington's receipt for the two thousand dollars, represented by the draft for that amount, was also sent to Falsken, but by whom is not certain and we think is immaterial. Farrington, who was or soon became insolvent, appropriated the New York drafts to his own use and failed to discharge to any extent the obligation of Falsken. Falsken is shown to have admitted in the following October that the receipt had come to his hands, and he testified that he learned in the following February that Farrington had not applied the money to the payment of the plaintiff's debt. He thereupon begun a series of attempts by solicitations and threats, direct and indirect, to obtain restitution from Farrington, which were continued through the summer of 1900, but were

unavailing. He seems not to have expressed any dissatisfaction with the conduct of the bank until these efforts had proved futile, although, in the meantime, he conversed more than once concerning the transaction with the officers of that institution.

Sometime in the fall of 1900, the transcript does not disclose the date, but apparently in October or November, Falsken begun this action, alleging a breach of the contract of collection as expressed by the letter of transmission of July 29, 1899, above copied, and praying judgment for $2,000 as moneys collected thereunder and not paid over or accounted for. The petition contains no allegation of fraud or of negligence. The answer, after admitting the contract and the collection of the money, contains what amounts to a plea of payment to the satisfaction and with the acquiescence, ratification and approval of the plaintiff. The reply is, in substance, a general denial of new matter. There were a verdict and judgment for the defendant, which this proceeding is prosecuted to reverse.

It will thus be seen that the sole question in the case is whether the defendant, acting in good faith, is justified by having paid out the money in the manner in which it did. The plaintiff contends that it is not, because, although the letter instructed the bank to pay the sum in controversy to Farrington as soon as it should be collected from him, it also directed it to send to Falsken a receipt for the money from the holder of the note and mortgage of the latter. But the two directions are not necessarily inconsistent, the holder was a nonresident, and it is not shown that the defendant or its officials knew either his name or whereabouts. The letter calls attention to the fact that the debt was contracted through Farrington and Towle, and expressly directs the payment of the money, not to the holder, but to Farrington, who thus appeared to be entrusted with the duty of seeing it applied to the desired use. It was "to be given to Farrington * * * to be paid on my loan." The bank was certainly not charged with the duty of payment either singly or jointly with Far-

rington, and if it was intended to be obligated to see to it that Farrington properly discharged his trust, that intent was not expressed, but must be inferred solely from the direction to the defendant to transmit a receipt from the holder to the plaintiff. The letter would have been literally complied with, if Farrington had paid the money to the holder, and obtained his receipt for it and delivered it to the bank for transmission. Under all the circumstances, we do not think that it was unreasonable to suppose that such was its intent, and, if so, the bank can not, of course, be held for the consequences of Farrington's default. The most that can be said, in behalf of the plaintiff, is that the letter was obscure and ambiguous with respect to a matter that afterwards turned out to be of vital importance. That it was so was due to the plaintiff's own fault or negligence, and he can not, with justice, be permitted to visit its consequences upon one who can not be accused of fraud or neglect, but, at the most, of an honest mistake. We do not think it is requisite to invoke the doctrine of ratification, but the conduct of the plaintiff for a year or more after he became fully acquainted with all the facts, tends very strongly to prove that he had the same understanding of his letter as did the defendant. It is surprising, if he supposed that his instructions had been violated to his damage in so large a sum, that he did not sooner demand reparation from the bank, especially when he encountered difficulty in obtaining restitution from Farrington. At all events, we think that the defendant is entitled to the protection of the rule that an agent who, in good faith and without negligence, acts upon his own understanding of faulty or ambiguous instructions is not liable to his principal in damages, although his interpretation of them may be erroneous. *Minnesota Linseed Oil Co. v. Montague & Smith,* 65 Ia. 67, 21 N. W. 184; *Pickett v. Pearsons,* 17 Vt. 470; *Vianna v. Barclay,* 3 Cow. (N. Y.) 281.

Such being the case, the verdict is the only one that would have had support by the evidence, and the consider-

ation of alleged errors in the progress of the trial is not required.

It is recommended that the judgment of the district court be affirmed.

HASTINGS and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.